UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CIVIL ACTION NO. 06-cr-50126 |
| VERSUS | JUDGE STAGG |
| EARNEST McCRAY, JR. | MAGISTRATE JUDGE HORNSBY |

## REPORT AND RECOMMENDATION

### Introduction

Before the court is Defendant's Motion to Suppress (Docs. 56 and 58). For the reasons that follow, it is recommended that Defendant's motion be denied.

### Procedural History

Defendant is charged with possession with intent to distribute crack and powder cocaine and possession of firearms during and in relation to drug trafficking crimes. Doc. 16. The charges result from a search of Defendant's residence in Zwolle, Louisiana on April 5, 2006, pursuant to a state search warrant obtained by Detective Randy Murphy of the Sabine Parish Sheriff's Office.

In accordance with the court's usual pre-trial proceedings, the case was originally set for trial on January 9, 2007. Docs. 22 and 29. On the morning of trial, Defendant expressed dissatisfaction with his attorney's failure to file a motion to suppress the search warrant that led to his arrest. Minutes, Doc. 35. Following a discussion with the court about the dangers of self-representation, and after additional consultation with his attorney, Defendant entered

a guilty plea to all counts. He was sentenced to the custody of the Bureau of Prisons for 240 months. Doc. 37. However, the judgment was vacated on appeal by the Fifth Circuit, and the case was remanded to this court "to enable the Defendant to re-plead and reserving to the Defendant the right to file a motion to suppress evidence seized during a search of his home." Doc. 47.

**Defendant's Motion to Suppress**

Defendant's Motion to Suppress (Doc. 56) argues that the Affidavit of Detective Murphy contained insufficient particularity upon which the state district judge could determine probable cause. Defendant further argues that the references in the Affidavit to a confidential reliable informant contain insufficient indicia of the credibility or reliability of the informant. Defendant also argues that the Affidavit fails to include any information about steps taken by Detective Murphy to corroborate the information allegedly provided by the informant.

Prior to the evidentiary hearing on the Motion to Suppress, Defendant filed an Amended Motion to Suppress (Doc. 58). In the amended motion, Defendant asserted the additional argument that the Affidavit contained material statements that were false. Defendant argues that Detective Murphy either knew the statements to be false or he showed a reckless disregard for the truth of the statements. Defendant argues that when the allegedly false statements are omitted, the remainder of the Affidavit is insufficient to establish probable cause for the search of Defendant's residence.

**Applicable Law**

A valid search warrant may be issued only upon a finding of probable cause. <u>United States v. Brown</u>, 941 F.2d 1300, 1302 (5th Cir.1991). The information necessary to show probable cause must be contained within a written affidavit given under oath. <u>Id</u>. Probable cause does not require proof beyond a reasonable doubt; a magistrate need only have a substantial basis for concluding that a search would uncover evidence of wrongdoing. <u>Id</u>. A magistrate's determination is entitled to deference by reviewing courts. <u>Id</u>. In addition, where officers obtained evidence in objectively reasonable good-faith reliance upon a search warrant, the evidence is admissible even if the affidavit on which the warrant was based was insufficient to establish probable cause. <u>United States v. Pope</u>, 467 F.3d 912, 916 (5th Cir. 2006); <u>United States v. McDaniel</u> 293 Fed.Appx. 265, 267-268 (5th Cir. 2008).

The defendant who challenges a search must show the warrant to be invalid by a preponderance of the evidence. <u>United States v. Richardson</u>, 943 F.2d 547, 548-549 (5th Cir. 1991). Initially, the defendant must make a prima facie showing of illegality. <u>Id</u>. The Government must then present rebuttal evidence. However, the burden of persuasion remains at all times with the defendant. <u>Id</u>. at 549.

When a defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the search warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the

defendant's request. Franks v. Delaware, 438 U.S. 154, 155-156 (1978). See also, United States v. Mays, 466 F.3d 335, 343 (5th Cir. 2006).

Whether Defendant made the required Franks showing in this case is doubtful at best. Nevertheless, due to the history of this case, the undersigned determined that the interests of justice were best served by holding a hearing on Defendant's motion and allowing Defendant's counsel to cross-examine Detective Murphy regarding the challenged statements in the affidavit. Accordingly, an evidentiary hearing was held on January 7, 2009.

**The Evidence**

Detective Murphy's Affidavit, which was filed into evidence at the hearing as Government Exhibits 1 and 3, consists of 14 separately numbered paragraphs. The first nine paragraphs set forth Detective Murphy's extensive experience and training in matters pertaining to the investigation of narcotics. Paragraphs 10 through 14 set forth the allegations particular to the search of Defendant's residence. Those paragraphs provide:

> 10) ON MARCH 30, 2006, YOUR AFFIANT RECEIVED INFORMATION FROM A CONFIDENTIAL RELIABLE INFORMANT (HEREAFTER REFERRED TO AS CRI), THAT THE RESIDENCE LOCATED AT 2263 WINSLOW ST. ZWOLLE, LA, DID CONTAIN A QUANTITY OF COCAINE. THAT CRI STATED THAT HE/SHE HAS HAD OCCASION TO BE IN THE RESIDENCE IN THE LAST FORTY-EIGHT HOURS AND DID SEE WITH HIS/HER OWN EYES A SUBSTANTIAL QUANTITY OF COCAINE.

> 11) YOUR AFFIANT HAS TALKED IN DETAIL WITH THE CRI CONCERNING HIS/HER KNOWLEDGE OF ILLEGAL DRUGS IN SABINE PARISH. YOUR AFFIANT HAS FOUND THE CRI TO BE VERY KNOWLEDGEABLE IN

THE LOOK, SMELL, PACKAGING AND DISTRIBUTION
METHODS OF ILLEGAL DRUGS IN SABINE PARISH.
THIS INFORMANT HAS GIVEN YOU [SIC] AFFIANT
[INFORMATION] ON MORE THAN FIVE OCCASIONS
THAT YOUR AFFIANT HAS FOUND TO BE RELIABLE
AND CORRECT CONCERNING DRUG VIOLATORS.

12) THE INFORMATION RECEIVED FROM THE CRI
CONCERNING THE RESIDENCE LOCATED AT 2263
WINSLOW ST. IN ZWOLLE, LA IS CONSISTENT WITH
INFORMATION RECEIVED BY YOUR AFFIANT
CONCERNING DRUG ACTIVITY AT THIS RESIDENCE
RECEIVED FROM NUMEROUS UNRELATED SOURCES.

13) A CHECK WITH THE SABINE PARISH 911 OFFICE
SHOWS THE RESIDENCE LOCATED AT 2263 WINSLOW
ST. ZWOLLE, LA, TO BE REGISTERED TO A [SIC]
EARNEST MCCRAY, JR.

14) BASED ON THE INFORMATION SET FORTH IN THIS
AFFIDAVIT, YOUR AFFIANT HEREBY PRAYS THAT A
SEARCH WARRANT FOR THE RESIDENCE LOCATED AT
2263 WINSLOW ST. ZWOLLE, LA, BE ISSUED.

Defendant alleges that those paragraphs contain two false statements. First,

Defendant alleges that the last sentence in paragraph 10 (that the informant was in

Defendant's residence in the last 48 hours and saw a substantial quantity of cocaine) is

untrue. Defendant argues that, because he is a loner and keeps to himself, no one could

possibly have been in the position to see what Detective Murphy says the informant saw, and

had Detective Murphy done the required due diligence to corroborate the informant's

information, Detective Murphy would have determined the informant was not telling the

truth.

The second alleged false statement challenged by Defendant is in paragraph 12 of the Affidavit pertaining to information from numerous unrelated sources concerning drug activity at Defendant's residence. Defendant argues that he did not engage in drug-related business from his residence and, therefore, the "numerous unrelated sources" were mere false rumors.

The evidence does not support any of Defendant's arguments. The Affidavit clearly establishes probable cause for the search of Defendant's home. The Affidavit sets forth recent information from an informant – who had been proven reliable on more than five occasions and who was knowledgeable about the look, smell, packaging and distribution of drugs in the local area – that a large quantity of cocaine was in Defendant's home. The Affidavit further states that the informant's information confirmed information received by Detective Murphy from other sources about drug activity at the home. These representations, when considered along with all of the other information in the Affidavit, are sufficient to establish probable cause for the search.

Furthermore, nothing from the evidentiary hearing casts any doubt on the validity of the Affidavit or the information from the informant. Detective Murphy, a narcotics detective with over 13 years of experience, testified that he verifies the informant's information in every case by asking a series of detailed questions designed to probe the basis of the informant's knowledge. For example, in a drug case, he asks the informant when and where he saw the drugs; how the drugs were packaged; whether the door to the suspect's house

opens inward or outward; whether children or dogs are present; whether trip hazards exist; whether vehicles are in the area, etc. Detective Murphy asked similar questions in this case to verify the informant's knowledge, and he did a "drive by" of Defendant's residence to corroborate information. However, due to the isolated nature of Defendant's residence (it was located at the end of a dead-end street), no surveillance was conducted.

With regard to the fact that the informant claimed to have been in Defendant's residence in the past 48 hours (Affidavit, para. 10), Detective Murphy "took the informant at their word." With regard to the information received from "numerous unrelated sources" concerning drug activity at Defendant's residence (Affidavit, para. 12), Detective Murphy stated that the information came from phone calls and anonymous tips. No attempt was made to do a controlled buy from Defendant's residence.

Detective Murphy also testified regarding his prior use of the informant. Detective Murphy explained that this informant was considered to be a "confidential reliable informant" or "CRI," which is different from simply a "confidential informant" or "CI." A CI may be anyone who calls to report that "X" is selling dope. A CRI, in contrast, is run through a "series of paces" and it takes weeks or months for a CI to be considered a CRI. The informant in this case had proven reliable on at least five other occasions, and Detective Murphy had made arrests based on his information.

During cross-examination, Detective Murphy was careful to answer counsel's questions in such a way as to protect the informant's identity. He testified that he and his

fellow narcotic agents must take particular care to maintain the confidentiality of their informants because the Zwolle community is a very small, rural community and most of the residents are familiar with (or are related to) each other. He did say, however, that the informant had pending (unrelated) charges against him and was a known user of narcotics.

Defendant's contention that the statements in paragraphs 10 and 12 of the Affidavit are untrue is based solely on his own testimony. He testified that he is a "loner" and keeps to himself. Defendant stated that no one would have been in his home to be a position to see drugs during the time in question. According to the Defendant, the only occupants of the home during the relevant time were he and his nine-year old daughter. The only other persons who could have been in the home were his "lady friend" and her grandchildren. Defendant testified that they would not have seen drugs in the home because he did not use drugs at that time; he did not sell drugs from his home; he did not "cook" any drugs at his home; and he did not package drugs at his home. According to Defendant, the drug business is very dangerous and, "you want your home to be a safe haven."

Defendant's contention that no one could have been in a position to see drugs in his house in the 48 hours preceding the search warrant is completely unbelievable. In fact, when the search warrant was executed (around noon on April 5, 2006), three other adults were present at Defendant's home: Defendant's girlfriend, Susan Parker, was in the home; and two friends, Albert Williams and "Regina," were in Defendant's yard working on an automobile. Crack cocaine, packaged in plastic bags for re-sale, was found on Defendant's night stand,

and a sawed-off shot gun was adjacent to it.  Defendant admitted he was not a "hermit," and the evidence does not support his contention that no one could have been in his home during the relevant time period to see the illegal drugs.

**Summary and Conclusion**

The Affidavit contained sufficient information to constitute probable cause for the search of Defendant's residence.  The Affidavit establishes the reliability of the informant based on Detective Murphy's prior track record with him and the informant's familiarity with the local drug trade.  Furthermore, the informant's information was specific about when he was last in Defendant's residence and what he saw.  That information was fresh and consistent with other information received by Detective Murphy concerning drug activity at the residence.

Defendant presented no credible evidence that Detective Murphy included *any* false or misleading information in the Affidavit.  In fact, Detective Murphy was a very credible witness, and the evidence shows that he acted in good faith in applying for the warrant.  There is no basis to suppress the evidence obtained as a result of the search.

Accordingly;

**IT IS RECOMMENDED** that Defendant's Motion to Suppress (Docs. 56 and 58) be **denied**.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Crim. P. 59(b)(2), parties aggrieved by this recommendation have **ten (10) business days** from the date of this Report and Recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 45(b). A party may respond to another party's objections within **five (5) business days** from the filing of the objections. Counsel are directed to furnish a paper courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file timely written objections to the proposed findings, conclusions and recommendation set forth above shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED at Shreveport, Louisiana, this 13th day of January, 2009.

MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE